# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAKEVIEW COLLECTION, LLC, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 09 CV 3933 |
| | )    Judge Blanche M. Manning |
| | ) |
| BANK OF AMERICA, NATIONAL ASSOCIATION, | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff, Lakeview Collection, LLC, purchased a building from defendant Bank of America on December 29, 2005 and planned to redevelop it into a mixed-use complex. To continue to operate a bank facility at this location, Bank of America agreed to lease the property back from Lakeview until development started. By the end of 2008, however, Lakeview had not started construction and Bank of America had vacated the property and stopped paying rent. Lakeview subsequently filed a suit for declaratory judgment, in which it asks this court to declare that the lease has not terminated and that Bank of America remains liable for rent and real estate taxes. Bank of America has moved to dismiss Lakeview's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. For the following reasons, Bank of America's motion to dismiss is denied.

## BACKGROUND

The following facts are taken from Lakeview's complaint and a real estate purchase agreement, which the complaint references and which Bank of America subsequently attached to its motion to dismiss. *See Tierney v. Vahle*, 304 F.3d 734, 738

(7th Cir. 2002) (on motion to dismiss, court can take into account documents central to the claims of the complaint even if not attached to the complaint). The court accepts these facts as true for purposes of this motion to dismiss. *Id.*

Lakeview wanted to buy and redevelop property which Bank of America owned and on which it operated a branch bank as well as a drive-through banking facility. Bank of America wanted to complete the sale by the end of 2005, but Lakeview was not ready to begin redevelopment by then. To facilitate the sale, Lakeview agreed to immediately purchase the property in exchange for Bank of America's agreement to lease back the parcels on which it operated the branch bank and the drive-through facility until Lakeview could "complete the process necessary to begin construction." Compl. ¶ 13.

On December 29, 2005, Lakeview and Bank of America executed three separate agreements related to the sale of the property. In the first, Lakeview purchased the Bank of America property ("the Purchase Agreement"). The Purchase Agreement also required Lakeview to begin demolishing and clearing the property no later than February 28, 2007. Lakeview further agreed to obtain all necessary permits and to begin construction of the mixed-use complex by June 30, 2008.

In the second agreement, Bank of America leased back from Lakeview the parcels on which it had been operating its branch bank and its drive-through facility ("the Existing Space Lease Agreement"). The Existing Space Lease Agreement provided that it shall "terminate on the date that is the later of (i) August 31, 2006, or (ii) one hundred twenty (120) days after Landlord provides written notice to Tenant that Landlord intends to demolish the structures on the Main Parcel and commence construction at the Main Parcel…." Existing Space Lease Agreement (attached as exhibit to Complaint) at ¶ 2.

The Existing Space Lease identified two other circumstances under which the lease would terminate: in the event of default, or in the event of condemnation. Existing Space Lease Agreement ¶¶ 13, 21(a).

Finally, Lakeview and Bank of America entered into a Temporary Space Agreement. Under the Temporary Space Agreement, Bank of America agreed that upon the termination of the Existing Space Lease, it would continue to lease the parcel on which it operated its drive-through facility, and expressed its intent to lease space for its branch bank in the newly redeveloped portion of Lakeview's complex.

The economic downturn and other issues delayed Lakeview's redevelopment of the property. As a result, Lakeview never gave Bank of America written notice that it intended to demolish the structures and begin construction on the property, an event that would have triggered the termination of the Existing Space Lease Agreement. Compl. ¶¶ 26-27. In May 2008, Bank of America vacated the parcel on which it had operated its branch bank and moved it elsewhere. After doing so, Bank of America paid Lakeview only a portion of the rent due for the branch bank under the Existing Space Lease for the months of June through October 2008. Bank of America continues to lease the parcel on which it operates its drive-through facility, but purports to do so under the Temporary Space Lease Agreement, not the Existing Space Lease Agreement. Compl. ¶¶ 29, 31.

Lakeview filed suit in state court seeking a declaratory judgment under 735 Ill. Comp. Stat. 5/2-701, asking the court to declare that the Existing Space Lease Agreement has not terminated and that, as a consequence, Bank of America remains liable for rent and real estate taxes according to the Existing Space Lease Agreement's terms. Bank of America removed the case to federal court and has filed a motion to dismiss Lakeview's

complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

The Seventh Circuit has recently synthesized the relevant Supreme Court caselaw as follows:

> So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Moreover, the Brooks court stated that the "plausibility requirement applies across the board, not just to antitrust cases." *Id*. However, the court should also take into consideration the complexity of the case when addressing whether a complaint alleges sufficient facts. *See Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim "will depend on the type of case" and "[i]n a complex antitrust or RICO case a fuller set of

Page 4

factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary"). To be facially plausible, a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

**ANALYSIS**

Bank of America sets out three arguments in support of its motion to dismiss. First, it argues that Lakeview's purported promises under the Existing Space Lease Agreement were illusory because, in fact, it was not obligated to do anything under the agreement, and therefore the agreement is void. Second, it argues that the Existing Space Lease Agreement was of potentially perpetual duration and, as a consequence, was terminable-at-will and did in fact terminate. Finally, it argues that Lakeview breached the covenant of good faith and fair dealing implied into every contract governed by Illinois law, which excused Bank of America from performing any further obligations under the Existing Space Lease Agreement. The court will address each argument in turn.

A.   **Illusory Obligation**

First, Bank of America asserts that the Existing Space Lease Agreement is unenforceable because Lakeview's purported obligations are illusory. Under Illinois law, an illusory promise is not sufficient consideration to support a contract. *See Preferred Enteral Sys., Inc. v. Central Home, Inc.*, 660 N.E.2d 174, 178 (Ill. App. Ct. 1995). A promise is illusory when it "appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything." *W.E. Erickson Const., Inc. v. Chicago Title Ins. Co.*, 641 N.E.2d 861, 864 (Ill. App. Ct. 1994).

Bank of America contends that Lakeview made no promises under the lease because the lease gave "Lakeview the unilateral and unlimited right to determine the term of the lease. That makes Lakeview's obligations under the lease illusory . . ." Brief [13-1] at 8. In support it cites *Dwyer v. Graham*, 457 N.E.2d 1239 (Ill. 1983). *Dwyer* involved a rental agreement that contained no termination provision. *Id.* at 1240-41. The Illinois Supreme Court concluded that, as a result, there was "no real undertaking or promise by the" tenants, and therefore their "claimed promise was only illusory." *Id.* at 1241. *Dwyer* is inapposite because, as detailed in the following section, the agreement between Bank of America and Lakeview contained multiple termination provisions.

Accordingly, Bank of America has provided no basis for concluding that Lakeview's obligations under the Existing Space Lease Agreement were illusory.

**B.     Terminable-At-Will**

As detailed above, the Existing Space Lease Agreement identified three events under which its termination would be triggered:

a. "on the date that is the later of (i) August 31, 2006, or (ii) one hundred twenty (120) days after Landlord provides written notice to Tenant that Landlord intends to demolish the structures on the Main Parcel and commence construction at the Main Parcel;"

b. in the event of default of Bank of America, Lakeview could terminate the lease by giving ten days' prior written notice; and

c. in the event of condemnation or eminent domain by any public entity.

Existing Space Lease Agreement ¶¶ 2, 13, 21(a). Bank of America contends that under Illinois law, these terms created an agreement terminable at will for two reasons: (1) the agreement gave Lakeview sole control over the duration of the Existing Space Lease Agreement because the lease terminated only after Lakeview provided written notice of

its intent to demolish the existing building and, (2) the agreement was potentially of perpetual duration because if Lakeview never provided written notice of its intent to demolish, termination would never be triggered.

Bank of America's argument misrepresents the terms of the Existing Space Lease Agreement. Under its terms, the lease would terminate not only after Lakeview provided written notice of its intent to demolish, but also after written notice from Lakeview to Bank of America of an event of default, or in the event of condemnation. "If a contract is terminable upon the occurrence of some event, neither party may terminate at will." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1012 (7th Cir. 1985). The effect of the termination language was "to create a relationship terminable for breach, rather than terminable at will." *Id.* Moreover, perpetual leases are not prohibited under Illinois law. *See Lake Forest Academy v. American Language Academy*, 777 F. Supp. 610, 616 (N.D. Ill. 1991) (perpetual leases are not invalid under Illinois law).

Accordingly, Bank of America has not established that the Existing Space Lease was terminable at will.

### C. Good Faith and Fair Dealing

Finally, Bank of America contends that the Existing Space Lease Agreement is no longer enforceable because Lakeview breached its duty to act in good faith by failing to deliver written notice of intent to demolish, which would have led to the agreement's termination. Every contract governed by Illinois law contains an implied duty of good faith and fair dealing. *See Gore v. Ind. Ins. Co.*, 876 N.E.2d 156, 161 (Ill. App. Ct. 2007). The implied duty ensures that parties to a contract do not take unfair advantage of

each other, particularly when one party possesses discretion to complete performance. *Id.* at 161-62 (stating that the duty of good faith and fair dealing "require[s] the party vested with discretion to exercise it reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the parties' reasonable expectations.")

Bank of America contends that the implied duty of good faith required Lakeview to provide written notice of its intent to demolish no later than February 28, 2007, the deadline identified in the separately-executed Purchase Agreement for Lakeview by which Lakeview was to "complete the demolition of existing structures and site clearing." Purchase Agreement (attached as Exhibit A to Brief [13-1]) at Rider R-9(c)(iii). Even though the deadline is set forth in the Purchase Agreement, the court may nevertheless take it into account when determining Lakeview's obligations under the Existing Space Lease Agreement because both agreements were executed simultaneously. *See IFC Credit Corp. v. Burton Indus., Inc.*, 536 F.3d 610, 614-15 (7th Cir. 2008) (under Illinois law, when "different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument").

However, even the Purchase Agreement lacks any requirement that Lakeview provide advance written notice of its intent to begin demolition. Rather, it required only that demolition be completed by February 28, 2007. To find that Lakeview breached a requirement to provide advance written notice of demolition by a specific date, the court would have to add a term to the parties' agreement that the parties did not include themselves. Perhaps Bank of America believes that such a term must be added under the implied duty of good faith and fair dealing, but its brief fails to develop such an argument

or to cite any authority compelling such an outcome. Undeveloped arguments unsupported by citations to relevant authority are forfeited, and therefore the court will not address Bank of America's argument any further. *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 916 (7th Cir.2005) (undeveloped and unsupported arguments are forfeited).

Accordingly, Bank of America has not established that it is entitled to dismissal of the complaint because it has not established that its continued performance is excused as a result of any breach of the implied duty of good faith and fair dealing.

## CONCLUSION

Bank of America has failed to show that the Existing Space Lease Agreement is unenforceable, and has therefore failed to show that Lakeview's complaint fails to state a claim. Accordingly, its motion to dismiss [12-1] is denied.

ENTER:

DATE: December 4, 2009

_____
Blanche M. Manning
United States District Judge